# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Derrick Martin King,

                Plaintiff,

        -vs-

Andrew Saul,
Commissioner of Social
Security[1]

                Defendants.

Case No. 5:18cv1283

JUDGE PAMELA A. BARKER

Magistrate Judge George J. Limbert

MEMORANDUM OPINION AND
ORDER

      This matter is before the Court on the Objections of Plaintiff Derrick Martin King ("Plaintiff" or "King") to the Report and Recommendation of Magistrate Judge George J. Limbert regarding Plaintiff's request for judicial review of Defendant Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. (Doc. Nos. 30, 32.) For the reasons that follow, Plaintiff's Objections are overruled, the Report & Recommendation ("R&R") is accepted, and the Commissioner's decision is affirmed.

## I. Background

      In December 2011 and January 2012, respectively, King filed his applications for DIB and SSI, alleging a disability onset date of December 24, 2011. (Doc. No. 12 (Transcript ["Tr."] ) at 87.) The applications were denied initially and upon reconsideration, and King requested a hearing before an administrative law judge ("ALJ"). (*Id*.) On January 22, 2014, the ALJ conducted a hearing at

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

which King appeared and testified without the assistance of an attorney or other representative. (*Id*.) A vocational expert ("VE") also testified. (*Id*.) On February 4, 2014, the ALJ issued a written decision, finding that King was not disabled. (Tr. 87-99.) The Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision.

On November 25, 2015, King filed a *pro se* Complaint in this Court challenging the denial of benefits. *See King v. Comm'r of Soc. Sec.,* Case No. 5:15cv2431 (N.D. Ohio) (Polster, J.) On May 16, 2016, the parties filed a Joint Stipulation to Remand, which the Court entered the following day. *Id* at Doc. Nos. 19, 20. On July 11, 2016, the Appeals Council issued an Order vacating the decision of the Commissioner and remanding the case to an ALJ to consider evidence from the Ohio Department of Job & Family Services ("ODJFS"), which had previously awarded King financial assistance benefits in the amount of $115 per month. (Tr. 1180-1184.)

On remand, the same ALJ conducted a second hearing on February 21, 2017, at which King again appeared and testified without the assistance of an attorney or other representative. (Tr. 1031.) On April 10, 2017, the ALJ issued a written decision, finding that King was not disabled. (Tr. 1031-1042.) The Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (Tr. 959-962.)

Proceeding *pro se*, King then filed the instant action in this Court on June 6, 2018, seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. No. 1.) The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1) for a Report and Recommendation. The Commissioner filed an Answer and Transcript on August 21, 2018. (Doc. Nos. 12, 13.) King thereafter filed several motions, including a Motion to Strike the Administrative Record. (Doc. No. 14.) In that Motion, King argued that the Transcript filed by the Commissioner

was incomplete and failed to include all relevant medical records. (*Id.*) On October 19, 2018, the Magistrate Judge granted King's Motion, in part, and ordered the Commissioner to "supplement the administrative record with any additional medical records that were submitted during the administrative process, if such records exist, at the time Defendant files the response to Plaintiff's brief on the merits." (Doc. No. 21.)

Meanwhile, on October 16, 2018, King filed his Brief on the Merits. (Doc. No. 20.) The Commissioner filed his Brief on the Merits on December 17, 2018, along with a Supplemental Transcript. (Doc. Nos. 23, 24.) King thereafter filed a Reply Brief on January 4, 2019.[2] (Doc. No. 26.) The following month, on February 20, 2019, King filed a Motion for Summary Judgment. (Doc. No. 28.)

On October 31, 2019, the Magistrate Judge issued an R&R. (Doc. No. 30.) Therein, the Magistrate Judge concludes that the ALJ's decision is supported by substantial evidence and recommends that the decision be affirmed. (Doc. No. 30.) King filed *pro se* Objections to the R&R, to which the Commissioner responded. (Doc. Nos. 32, 34.)

Plaintiff raises the following six objections to the R & R:

1.    The Magistrate Judge erred by using the CM/ECF numbers instead of the actual page numbers in the transcript of proceedings.

2.    The Magistrate Judge erred in denying Plaintiff's Motion for Summary Judgment.

3.    The Magistrate Judge erred in finding that the ALJ had adequately developed the record after remand from this Court.

---

[2] On January 9, 2019, the instant matter was stayed during the government shutdown pursuant to General Order 2019-1. On February 20, 2019, King filed a Motion to lift the stay, which the Magistrate Judge granted on February 26, 2019. (Doc. Nos. 27, 28.)

4. The Magistrate Judge erred in upholding the ALJ findings regarding the medical evidence of Plaintiff's residual functional capacity.

5. The Magistrate Judge erred in upholding the ALJ findings regarding Step Five of the sequential evaluation process because it was based upon an improper hypothetical that was not based on the true residual functional capacity and the medical evidence.

6. The continued use of the Dictionary of Occupational Titles in Step Five of the sequential evaluation process is unconstitutional in violation of Plaintiff's right to due process under the law.

(Doc. No. 32.) The Court has conducted a *de novo* review of the issues raised in King's Objections.

## II. Analysis

### A. Standard of Review

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926 at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, 2015 WL 5316216 at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell,* 1994 WL 532926 at *1). *See also* Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The impairment must prevent the claimant from doing the claimant's previous work, as well as any

other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). Consideration of disability claims follows a five-step review process.[3] 20 C.F.R. § 404.1520.

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the

---

[3] Under this five step review, the claimant must first demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). Before considering step four, the ALJ must determine the claimant's residual functional capacity; i.e., the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his/her impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbot*, 905 F.2d at 923.

Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996)); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## B.      Plaintiff's Objections to the R&R[4]

### 1.      Record Citations Used by the Magistrate Judge

In his first Objection, King argues that his ability to respond to the Magistrate Judge's R&R was "severely hampered" by the Magistrate Judge's use of "misleading page numbers and page numbers which Plaintiff does not have access to." (Doc. No. 32 at p. 10.)  Specifically, King notes that, in a footnote in the R&R, Magistrate Judge Limbert states as follows:

> All citations to the transcript refer to the page numbers assigned when the transcript
> was filed in the CM/ECF system rather than the page numbers assigned when the

---

[4] The Magistrate Judge's thorough recitation of the medical and opinion evidence need not be repeated and is incorporated herein.

6

transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

(Doc. No. 30 at p. 1, fn 2.)  King asserts that, because he is proceeding *pro se*, he "is not part of the Court's CM/ECF system and does not receive documents digitally."  (Doc. No. 32 at p.10.)  Rather, King maintains that he received a paper copy of the Transcript, which was numbered sequentially at the time it was prepared and does not include the page numbers assigned at the time of filing by the Court's ECF system.  (*Id*.)  King asserts that "Magistrate Limbert's use of the CM/ECF page numbers . . . is improper, and Plaintiff was prejudiced by Magistrate Limbert's use of the CM/ECF page numbers which Plaintiff did not have access to."  (*Id*. at p. 12.)

As noted above, the Commissioner filed the Transcript of Proceedings on August 21, 2018. [5] (Doc. No. 12.)  The Transcript is 2,211 pages in length[6] and contains two different sets of page numbers.  The first is the sequential pagination that was assigned at the time the Transcript was created (hereinafter referred to as the "Transcript numbers").  These pages numbers are located in the lower right-hand corner of each page of the Transcript and are numbered 1 through 2,211.  The second set of page numbers are assigned by the Court at the time of filing.  These numbers are called "PageID" numbers and are located at the top right-hand corner of each page of the Transcript (hereinafter referred to as "PageID#s").  The PageID#s of the Transcript filed in the instant case are PageID#s 62-2281.  Because King is proceeding *pro se*, he was served with a paper copy of the

---

[5] The Commissioner also filed a Supplemental Transcript on December 18, 2018. (Doc. No. 24).  King, however, acknowledges that he had access to the ECF-generated page numbers for the supplemental transcript.  (Doc. No. 32 at p. 10, fn 3.)

[6] Page 1 of the Transcript actually begins after the table of contents, which accounts for the first nine pages of the document.

Transcript, which apparently did not include the PageID#s assigned at the time of filing. Rather, the only page numbers in the paper copy that King received are the Transcript numbers located at the lower right-hand corner of the document.

In the R&R, the Magistrate Judge appears to indicate in a footnote that all references to the Transcript in the R&R will be to the PageID#s. (Doc. No. 30 at fn 2.) However, as the Commissioner correctly notes, the citations in the R&R are actually to the Transcript numbers; i.e., the numbers located at the lower right-hand corner of each page of the Transcript. (Doc. No. 30.) As King himself acknowledges, he did, in fact, have a copy of the Transcript which included the Transcript page numbers located at the lower right-hand corner of each page.[7] (Doc. No. 32 at p. 10.) Thus, while there may have been some confusion generated by the Magistrate Judge's footnote, all references to the Transcript in the R&R were to the page numbers that appeared in the copy that was served on King in August 2018. Moreover, as a case participant, King was free to access the electronic copy of the Transcript at the Clerk of Court's Office to verify the pagination that was ultimately used in the R&R.

In light of the above, the Court finds that King has not demonstrated that he was prejudiced by the Magistrate Judge's mistaken statement that references to the Transcript were to the PageID numbers.[8] King's first objection is, therefore, without merit and overruled.

**2.      Denial of King's Motion for Summary Judgment**

---

[7] Moreover, the Certificate of Service to the Answer states that the Commissioner served a copy of the Answer and Transcript to King on August 21, 2018. (Doc. No. 13 at p. 3.)

[8] In this regard, the Court further notes that King was granted a thirty-day extension of time within which to file his Objection, allowing him over 30 days to examine and respond to the R&R. King then filed a lengthy Objection, which is over 30 pages in length and raises six separate objections. Thus, King has not demonstrated that his ability to meaningfully object to the R&R was prejudiced.

In his second Objection, King "objects to Magistrate Judge Limbert's blanket denial of [Plaintiff's] motion for summary judgment on the grounds that he did not give proper consideration to the motion." (Doc. No. 32 at p. 12.) King asserts that "district courts across the country have engaged in the use of the summary judgment process to dispose of social security judicial review proceedings," and argues that the Magistrate Judge's failure to consider the merits of his motion shows that "he has failed to competently consider this case in an unbiased fashion." (*Id.* at p. 14.)

The Court disagrees. As discussed above, the record reflects King filed his Merits Brief on October 16, 2018; the Commissioner filed his Brief in Opposition on December 17, 2018; and King filed a Reply Brief on January 4, 2019. (Doc. Nos. 20, 23, 26.) King did not file his Motion for Summary Judgment until February 20, 2019, by which time the matter had already been fully briefed by both parties. (Doc. No. 28.) The Magistrate Judge denied King's Motion and declined to consider the arguments raised therein on this basis, explaining that "[t]he undersigned will not consider Plaintiff's supporting memorandum contained in the Motion for Summary Judgment because both parties already submitted merits briefs and Plaintiff filed a reply brief prior to Plaintiff's motion." (Doc. No. 29 at p. 2.) *See also* Local Rule 16.3.1. (contemplating only one merits brief by each party and one reply brief by the plaintiff.)

Under these circumstances, the Court finds that the Magistrate Judge did not err in denying King's Motion for Summary Judgment and declining to consider the arguments raised therein. King had the opportunity to raise all arguments in support of his case in both his Merits Brief and Reply Brief. He is not entitled to raise new issues or relitigate those already raised by filing a summary judgment motion after merits briefing has already been concluded. Moreover, the cases cited by King in his Objections are distinguishable because, in those cases, the parties initially raised their

arguments in cross motions for summary judgment and had not previously also filed merits briefs. *See Prince v. Comm'r of Soc. Sec.*, Case No. 13cv12055, 2014 WL 4639506 (E.D. Mich. Sept. 16, 2014) (deciding matter based on parties' cross-motions for summary judgment where no merits briefs had previously been filed); *Schwartz v. Berryhill*, Case No. 1:16cv573, 2019 WL 117987 (D. Del. Jan. 7, 2019) (same); *Martinez v. Colvin*, Case No. 4:17cv2507, 2018 WL 4680567 (S.D. Tex. Sept. 28, 2018) (same); *Fleming v. Berryhill*, Case No. 1:17cv4145, 2018 WL 4586160 (N.D. Cal. Sept. 24, 2018) (same).

Accordingly, King's second objection is without merit and overruled.

### 3.      Duty to Develop the Record

In his third objection, King argues the Magistrate Judge erred in finding that the ALJ adequately developed the record.  (Doc. No. 32 at pp. 14-15.)  The entirety of King's objection as to this issue is as follows:

> Plaintiff objects to Magistrate Judge Limbert's finding that the ALJ adequately developed the record following remand from this Court. An ALJ has a duty to develop the record before determining whether the claimant is not disabled. *See, e.g., Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In addition, an administrative law judge "has a special, heightened duty to develop the record" "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson v. Comm'r of Soc. Sec.*,280 F. App'x 456, 459 (6th Cir.2008) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir.1983)). In order to satisfy this heightened duty, an administrative law judge must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Lashley*, 708 F.2d at 1052 (internal quotations omitted).  There is no bright line rule for determining when an administrative law judge has failed to fully develop the record; "[t]he determination in each case must be made on a case by case basis." *Id*.

(*Id*.)

King's objection is overruled.  As an initial matter, the Court finds King has failed to properly raise an objection with respect to this issue.  As set forth above, the entirety of King's objection is

devoted to setting forth the legal standard regarding an ALJ's duty to develop the record. King fails to identify any specific error in the Magistrate Judge's analysis of this issue, or otherwise explain how he believes the ALJ failed in his duty. As the Sixth Circuit has explained, overly general objections do not satisfy the objection requirement. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991). Simply "identifying the discrete claims for which the magistrate judge's recommendations were adverse to [plaintiff] and then urg[ing] that they instead be resolved in his favor" is not sufficient to properly raise an objection. *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). *See also Stamtec v. Anson,* 296 Fed. Appx. 518, 520 (6th Cir. 2008) ("Objections disputing the correctness of the magistrate's recommendation but failing to specify the findings believed to be in error are too general and therefore insufficient."); *Andres v. Comm'r of Soc. Sec.*, 733 Fed. Appx. 241, 243 (6th Cir. 2018) (noting that objections must be specific or they will be deemed forfeited); *Roat v. Comm'r of Soc. Sec.*, 2020 WL 837345 at * 1 (W.D. Mich. Feb. 20, 2020) (stating that "the Court is not obligated to address objections that do not identify specific errors in the magistrate judge's proposed recommendations.")

Rather, a plaintiff must identify specific errors in an R&R to properly raise and preserve an objection relating thereto. Here, King's one sentence statement that the Magistrate Judge erred, followed by a recitation of the legal standard, is insufficient to properly raise an objection with respect to this issue.[9]

---

[9] To the extent King's objection could be construed as attempting to re-raise the same arguments set forth in his Merits Brief with respect to this issue, he has not raised a proper objection. As many district courts have noted, "objections to magistrate judges' reports and recommendations are not meant to be simply a vehicle to rehash arguments" set forth in the briefing before the magistrate judge. *Owens v. Comm'r of Soc. Sec.*, 2013 WL 1304470 at *3 (W.D. Mich. Mar. 28,

Moreover, even if the Court were to give King every benefit of the doubt and consider his general objection regarding this assignment of error, the Court would find it to be without merit. In the Sixth Circuit, it is well established that the claimant—not the ALJ—has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008) (citing 20 C.F.R. § 404.1512(a)). *See also Struthers v. Comm'r of Soc. Sec.,* 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y. of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.") However, there is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson*, 280 Fed. Appx. at 459 (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983)).

Here, it is undisputed that King was without counsel at the time of the administrative proceedings below. King has not argued, however, that he was "incapable of presenting an effective case" or "unfamiliar with hearing procedures," both of which are required to impose a special, heightened duty on an ALJ to develop the record.[10] Moreover, even assuming *arguendo* that the ALJ

---

2013) (quoting *Nickelson v. Warden*, 2012 WL 700827 at *4 (S.D. Ohio Mar. 1, 2012)). *See also Roat*, 2020 WL 837345 at * 1; *Wolford v. Comm'r of Soc. Sec.,* 2017 WL 3123937 at *1 (N.D. Ohio July 24, 2017).

[10] Indeed, the record reflects that King has been more than capable of advocating on his own behalf. As set forth above, King filed his first action in this Court *pro se* and successfully negotiated a stipulated remand. *See King v. Comm'r of Soc. Sec*., Case No. 5:15cv2431 (N.D. Ohio) (Doc. Nos. 19, 20.) Additionally, the Transcript in the instant case shows that King corresponded with the ALJ on several occasions on remand in order to submit additional evidence and request that subpoenas be issued to several of his medical providers. (Tr. 1303-1309, 1202-1204.) Moreover, the record reflects

did have a heightened duty to develop the record below, the Court agrees with the Magistrate Judge that King has not demonstrated that the ALJ failed in that duty. As noted above, after the parties stipulated to a remand, the Appeals Council vacated the ALJ's previous decision and remanded for the ALJ to consider evidence from the Ohio Department of Job & Family Services ("ODJFS"), which had previously awarded King financial assistance benefits in the amount of $115 per month. (Tr. 1180-1184.) Subsequently, on September 7, 2016, the ALJ sent a letter to King requesting additional information about the ODJFS award, as follows:

> As you know, the United States District Court for the Northern District of Ohio and the Appeals Council vacated my prior decision on your claim for disability and remanded the case to me for further proceedings for the sole reason that I did not consider your receipt of benefits from the Ohio Department of Job and Family Services (ODJFS) in making a determination that you were not disabled. As such, I am required to gather any and all evidence ODJFS used in granting you state disability financial assistance benefits in determining if you qualify for Social Security benefits. Please submit with [sic] 30 days of receipt of this letter any and all evidence regarding this issue. This should include, but not be limited to, evidence you offered ODJFS in support of your request for assistance from them, as well as any documentation they have provided you regarding their findings.
>
> I have enclosed a release for you to sign so that I may obtain information from ODJFS regarding your award of state disability financial assistance. I will be requesting from ODJFS the records they used to award you benefits as well as an explanation of the criteria they used in determining you should receive such benefits. In lieu of a release, I will subpoena these records from ODJFS.

(Tr. 1201.) King responded via letter dated September 12, 2016 and attached copies of documents related to his disability determination by the ODJFS, including a copy of the May 2013 ODJFA determination awarding disability benefits. (Tr. 1303-1399.)

---

King sent written interrogatories to the VE and examined the VE during the February 21, 2017 hearing. (Tr. 1420-1425, 1085-1090, 1092-1095.)

Thereafter, on September 28, 2016, King requested that the ALJ issue subpoenas to five of his physicians (i.e. Drs. Dhyanchand, Satyan, Cutler, Lebron, and Burkham) to instruct them to complete a set of interrogatories. (Tr. 1202-1204.) King further advised that he had previously submitted nearly 300 pages of records relating to his ODJFS disability award and requested a status update. (*Id*.) In a letter dated September 29, 2016, the ALJ responded, as follows:

> In response to your letter of September 28, 2016, I will offer your requested interrogatories to the doctors you listed, with orders to complete.
>
> As for information regarding the Ohio Department of Job and Family Services decision granting you benefits, I feel the evidence you offered is sufficient. However, if there is additional evidence from ODJFS that you feel is necessary, please let me know and I will consider a subpoena.

(Tr. 1238.) Subsequently, on December 8, 2016, the ALJ notified King of the additional evidence that he secured and proposed to enter into the record, including the responses to the five sets of interrogatories that were sent to his physicians. (Tr. 1400-1401.)

During the February 21, 2017 hearing, the ALJ indicated that he believed King had submitted "ample evidence" regarding the ODJFS disability determination. (Tr. 1097.) In the April 10, 2017 decision, the ALJ expressly considered the ODJFS disability determination and accorded it "little weight" for the same reasons that he discounted the opinion of King's treating physician Dr. Dhyanchand. (Tr. 1040.)

In light of the above, the Court finds that King has not demonstrated the ALJ failed to adequately develop the record. As set forth above, the ALJ requested and received information from King regarding the ODJFS determination; served written interrogatories on five of King's physicians at his request regarding this determination; and expressly considered the ODJFS determination in his April 2017 decision. King has failed to adequately explain in what respect he believes the ALJ failed

to develop the record or otherwise articulate how he believes he was prejudiced by the manner in which the ALJ gathered evidence regarding and evaluated the ODJFS determination on remand.

Accordingly, and for all the reasons set forth above, King's third objection is without merit and overruled.

### 4.     Weighing of Medical Opinion Evidence

In his fourth objection, King argues that the Magistrate Judge erred in finding that the ALJ properly weighed the opinions of occupational therapist Carol Little and treating physician Roberto Lebron.[11]  (Doc. No. 32 at pp. 15-21.)   For the following reasons, the Court disagrees.

#### a.     Ms. Little

On August 18, 2016, King underwent a Functional Capacity Evaluation ("FCE") with occupational therapist Carol Little, O.T.  (Tr. 1931-1943.)  King reported pain in his legs and lower back that interfered with his abilities to (1) stand, walk, and sit for prolonged periods; and (2) repetitively lift and carry heavy objects.  (Tr. 1941.)  In a lengthy and detailed assessment, Ms. Little found that King "has some functional limitations and medical issues limiting the type of work he can perform" but noted that he had "limited participation" in strength and endurance testing due to over guarding and fear of re-injury.  (Tr. 1941.)  She further explained as follows:

> The client complained of pain in his lower [back] and legs, stiffness in his lower back, and tingling sensation in his feet.  He states the tingling sensation in his feet does not restrict his functional ability.  He's not able to tolerate standing and walking for prolonged periods of time.  He is not able to repetitively lift or carry heavy objects. He can't squat, stoop, crouch, lift from floor to knuckle or floor to waist.  He's decondition[ed] and therefore has poor endurance for performing some functional tasks.  The client may have some limitations in lifting ability/lifting capacity, but due

---

[11] While King references the opinions of treating physician Dr. Dhyandchand in one sentence of his Objection, he offers no specific argument that the Magistrate Judge erred in concluding that the ALJ offered good reasons for rejecting Dr. Dhyandchand's opinions.  Thus, the Court deems any such argument waived and does not address it herein.

to sub-maximal effort it is difficult to identify his likely true abilities and limitations in material handling.

(*Id.*) Ms. Little concluded that King should be able to function "at least at the [Department of Labor] classification of Sedentary to Light" levels.[12] (*Id.*)

In his decision, the ALJ accorded "little weight" to Ms. Little's FCE, explaining as follows:

Occupational Therapist Carol Little performed a Functional Capacity Evaluation with the claimant in August 2016. While Ms. Little concluded the claimant should be able to function at least in the light or sedentary level, she did say that he could not stand and/or walk for prolonged periods and could not repetitively lift and carry heavy objects. She also wrote "due to sub-maximal effort, it is difficult [to] identify his likely true abilities and limitations in material handling." I give little weight to Ms. Little's limits with standing and walking as they are not supported by her own exam. She admitted she felt the claimant was not giving maximum effort which calls into question the results of the evaluation. Further, the limits with standing and walking she offered are not supported by the objective medical evidence of record, the other opinions that show no limits with standing and walking, and the claimant's extensive daily activities including his ability to drive, care for his pets, care for himself, and help care for his mother.

(Tr. 1040.) After discussing the relevant medical evidence and other opinion evidence in the record, the ALJ assessed the following RFC:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except, specifically, he can lift, carry, push and pull 20 pounds occasionally and ten pounds frequently. He can sit for six hours and stand and/or walk for six hours in a normal workday. He cannot climb ladders, ropes, or scaffolds. He can occasionally kneel, crouch, and crawl. This individual cannot drive commercially

---

[12] Social security regulations define "sedentary" work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). "Light" work is defined as follows: Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

and must avoid workplace hazards such as unprotected heights or exposure to dangerous moving machinery. Finally, this individual must avoid concentrated exposure to temperature extremes of hot and cold.

(Tr. 1035.)

King argues generally that the Magistrate Judge erred in concluding that the ALJ properly considered the opinions set forth in Ms. Little's FCE. The Court disagrees. As noted above, Ms. Little is an occupational therapist. Under Social Security Regulations, an occupational therapist is not an "acceptable medical source" entitled to the type of controlling weight an acceptable medical source enjoys. *See* 20 C.F.R §§ 416.902(a)(1)–(8), 416.927(a)(1), 416.927(f). *See also LaRiccia v. Comm'r of Soc. Sec.*, 549 Fed. Appx 377, 385 (6th Cir. 2013); *Philpot v. Berryhill*, 2017 WL 6759417 at * 16 (N.D. Ohio Dec. 7, 2017); *Gardenhouse v. Comm'r of Soc. Sec.*, 2015 WL 1458163 at * 9 (W.D. Mich. March 30, 2015). Nonetheless, Social Security Ruling ("SSR") 06–03p[13] notes that information from "other sources" such as occupational therapists "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06–03p, 2006 WL 2329939 at *2–3 (Aug. 9, 2006). *See also* 20 CFR § 416.927(c). Interpreting this SSR, the Sixth Circuit has found that opinions from "other sources" who have seen the claimant in their professional capacity "should be evaluated using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). *See also McKitrick v. Comm'r of Soc. Sec.*, 2011 WL 6939330 at * 12–13 (N.D. Ohio Dec. 30, 2011). *See also* 20 CFR § 416.927(c),(f).

---

[13] SSR 06-03p was rescinded on March 27, 2017. This rescission is effective for claims filed on or after March 27, 2017. *See* "Rescission of SSRs 96-2p, 96-5p, and 06-3p", 2017 WL 3928298 at *2 (SSA March 27, 2017). Here, King filed his applications in 2011 and 2012, prior to the rescission of SSR 06-03p.

Here, the Court finds that the ALJ's analysis of Ms. Little's FCE more than satisfies the regulatory requirements for considerations of opinions from "other sources." The ALJ expressly acknowledged the opinion of Ms. Little that King could not stand/walk for prolonged periods or repetitively lift and carry heavy objects. However, the ALJ accorded "little weight" to these opinions on several grounds, including that the proposed standing/walking limits were not supported by the objective medical evidence and were inconsistent with King's extensive daily activities. (Tr. 1040.) The ALJ also rejected Ms. Little's FCE in light of Ms. Little's own finding that King failed to put forth maximum effort during functional capacity testing. (*Id.*) Notably, King does not argue in his Objections that any of these stated reasons are not supported by substantial evidence.

In sum, because Ms. Little is an "other source," the ALJ was not required to accord any particular weight to her opinion nor was he required to provide "good reasons" for rejecting it. Rather, the ALJ was required only to evaluate Ms. Little's opinion using the applicable factors set forth in the regulations. *See Cruse*, 502 F.3d at 541. Here, the Court finds the ALJ not only met but, in fact, exceeded these requirements by expressly considering Ms. Little's FCE, explaining the amount of weight accorded to it, and articulating several good reasons for discounting it. King's argument to the contrary is without merit and rejected.

### b.    Dr. Lebron

King also argues that the ALJ erred in his evaluation of Dr. Lebron's opinion. Unlike Ms. Little, Dr. Lebron is both an "acceptable medical source" and King's treating physician. A treating source opinion must be given "controlling weight" if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th

Cir. 2013); 20 C.F.R. § 404.1527(c)(2).[14]  However, "a finding that a treating source medical opinion

... is inconsistent with the other substantial evidence in the case record means only that the opinion is

not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of*

*Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (quoting SSR 96–2p, 1996 SSR LEXIS 9 at *9).  Indeed,

"[t]reating source medical opinions are still entitled to deference and must be weighed using all of

the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[15]  *See also*

*Gayheart*, 710 F.3d at 376.  If the ALJ determines a treating source opinion is not entitled to

controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that

are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave

to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc.*

*Sec*., 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96–2p, 1996 SSR LEXIS 9 at * 5).  *See also*

*Gayheart*, 710 F.3d at 376.

On October 25, 2016, Dr. Lebron answered written interrogatories regarding King's physical

functional abilities.  (Tr. 2164-2171.)  Dr. Lebron identified diagnoses of diabetes type 2, obesity,

peripheral vascular disease, congestive heart failure, and hyperlipidemia. (Tr. 2164.)  Although asked

to provide further information about King's medical conditions (including the nature and extent of

his symptoms, pertinent clinical examination findings, the results of diagnostic testing, and King's

---

[14] Revised versions of these regulations took effect on March 27, 2017 and apply to disability claims filed on or after that date. *See* 82 Fed. Reg. 5844 (March 27, 2017).  Because King filed his applications in 2011 and 2012, the Court will apply the regulations that were in effect at that time.

[15] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

response to prescribed therapies), Dr. Lebron instead referred generally to unspecified "medical notes." (Tr. 2165.) Moreover, Dr. Lebron did not directly answer a series of interrogatories regarding King's abilities to lift and carry, stand, walk, sit, push/pull, balance, stoop, kneel, crouch, crawl, or climb ladders, ropes, scaffolds, ramps, and stairs. (Tr. 2166-2168.) Rather, Dr. Lebron simply wrote "refer to functional capacity assessment," and attached a copy of Ms. Little's August 2016 FCE. (*Id.*)

The ALJ discussed Dr. Lebron's answers to interrogatories in the decision, as follows: "At Exhibit 33F, Dr. Lebron offered no limits and instead directed reference to the Functional Capacity Evaluation by Ms. Little discussed above." (Tr. 1040.)

The Court agrees with the Magistrate Judge that, to the extent Dr. Lebron's response is sufficient to be considered a "medical opinion," the ALJ provided good reasons for rejecting it by expressly referencing his discussion of Ms. Little's FCE. As discussed above, the ALJ gave several reasons for rejecting Ms. Little's FCE, including that it was inconsistent with the objective medical evidence and King's extensive daily activities. (*Id.*) The ALJ also rejected Ms. Little's FCE in light of Ms. Little's own finding that King failed to put forth maximum effort during functional capacity testing. (*Id.*) The Court finds that the reasons articulated by the ALJ for rejecting Ms. Little's FCE constitute "good reasons" for rejecting Dr. Lebron's interrogatory responses.[16]

As Dr. Lebron's interrogatory responses simply incorporate Ms. Little's FCE, and the ALJ articulated several "good reasons" for rejecting that FCE, the Court finds the ALJ did not fail to properly evaluate Dr. Lebron's responses. King's fourth objection is without merit and, therefore, overruled.

---

[16] Again, King does not argue that any of the reasons articulated by the ALJ are not supported by substantial evidence.

### 5.  Hypothetical

In his fifth objection, King asserts that the hypothetical question upon which the ALJ based his RFC failed to reflect all of King's functional limitations.  (Doc. No. 32 at p.23.)  He argues that the ALJ should have instead relied upon a hypothetical that incorporated the results of the functional capacity evaluation performed by Ms. Little. (*Id*.)  King maintains that "in this case, the administrative law judge clearly used a hypothetical that did not truly and accurately portray Plaintiff's abilities based on the medical evidence present in the case file." (*Id*. at p. 26.)

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987); *Diaz v. Berryhill*, 2018 WL 2338864 at * 12 (N.D. Ohio May 8, 2018).  Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs*., 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible.  *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx 425, 429 (6th Cir. 2007) (citing *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Evans v. Berryhill*, 2018 WL 1750465 at * 28 (N.D. Ohio Mar. 21, 2018).

Here, King argues the ALJ erred because he failed to base the RFC on the following hypothetical:

> Please consider a younger individual under Social Security regulations with a high school education, the same past work experience as I have (which was considered to be a medium level SVP-2 job with no transferable skills).  In this hypothetical, the individual: (1) can carry bilaterally 11 pounds frequently and can occasionally carry up to a maximum of 32 pounds; (2) can pull bilaterally 11 pounds and can occasionally carry up to a maximum of 50 pounds; (3) can frequently push bilaterally 11 pounds and occasionally push up to 41 pounds. The individual is unable to perform repetitive bending/stooping, repetitive or sustained squatting, can sit for up to 120 minutes in an

eight-hour workday, and can stand for up to 30 minutes in an eight-hour workday, is unable to crawl or kneel, is unable to climb ladders. The individual cannot drive commercially. This person must avoid workplace hazards such as unprotected heights or exposure to dangerous moving machinery. This person must avoid concentrated exposure to temperature extremes of hot and cold.

(Doc. No. 32 at p. 22.) *See also* Tr. 1420. The VE testified that there would be no jobs available for such a hypothetical individual because "sitting 2 hours per day and standing 30 minutes per day would preclude gainful work activity." (Tr. 1439, 1082.)

King acknowledges that the above hypothetical "was based solely on the results of the functional capacity evaluation performed by occupational therapist Carol Little." (Doc. No. 32 at p. 23.) Because the Court has found that the ALJ reasonably rejected the limitations set forth in Ms. Little's August 2016 FCE, the ALJ need not have incorporated those limitations into the hypothetical question that formed the basis of the RFC.[17]

Accordingly, King's argument that the ALJ improperly relied on an improper hypothetical at step five is without merit. [18] King's fifth objection is overruled.

------

[17] In formulating the RFC, the ALJ relied on the following hypothetical: "Please consider a younger individual under Social Security regulations with a high school education, the same past work experience as I have (which was considered to be a medium level SVP-2 job with no transferable skills), For this hypothetical, the individual can lift, carry, push, and pull up to twenty pounds occasionally and ten pounds frequently. This individual can sit for up to six hours in a normal eight-hour workday. This individual can stand and/or walk for six hours in a normal eight-hour workday. This individual cannot climb ladders, ropes, and scaffolds. This individual can occasionally kneel, crouch, and crawl. This individual cannot drive commercially and must avoid workplace hazards such as unprotected heights or exposure to dangerous moving machinery. Finally, this individual must avoid concentrated exposure to temperature extremes of hot and cold." (Tr. 1421.) See also Tr. 1035. The VE testified that an individual with these limitations could perform the representative jobs of cafeteria attendant, furniture rental clerk, and sales attendant. (Tr. 1439.)

[18] Later in his Objection, King states generally that the hypothetical that formed the basis of the RFC failed to consider "additional medical evidence in the file." (Doc. No. 32 at p. 24.) King does not, however, identify any specific medical evidence that he believes is inconsistent with the RFC. In the absence of any meaningful development of this argument, the Court deems this argument waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995)).

6. **Use of Dictionary of Occupational Titles**

In his sixth and final objection, King objects to the Magistrate Judge's finding that the Commissioner's continued use of the Dictionary of Occupational Titles ("DOT") at step five does not violate King's due process rights. (Doc. No. 32 at pp. 26-32.) King argues that the DOT is obsolete, outdated, and "of questionable current value." (*Id*. at p. 27, 30.) He further asserts that the Magistrate Judge failed to respond to King's arguments regarding the findings of the SSA's Occupational Information Development Advisory Panel ("OIDAP").[19] (*Id*. at p. 31-32.)

As an initial matter, the Court rejects King's argument that the Magistrate Judge failed to address King's arguments regarding the OIDAP's findings. To the contrary, the Magistrate Judge expressly acknowledged King's arguments regarding the obsolescence of the DOT and the findings of the OIDAP panel, as follows:

> Plaintiff's second and third reasons are interrelated. Plaintiff argues that the VE's testimony was not credible because he relied solely on the DOT and not other sources and because he referred to an "incorrect" number of jobs that exist in the national economy. ECF Dkt. #20 at 22. Plaintiff correctly points out that the DOT was last updated in 1991. OFFICE OF THE INSPECTOR GEN., SOC. SEC. ADMIN., THE SOCIAL SECURITY ADMINISTRATION'S EFFORTS TO DEVELOP ITS OWN SOURCE OF OCCUPATIONAL INFORMATION FOR USE IN ITS DISABILITY PROGRAMS 2 (June 2018), https://www.oversight.gov/sites/default/files/oig-reports/A-01-15-15035.pdf [hereinafter SSA 2018 Report]. Consequently, the DOT still includes occupations that no longer exist and excludes occupations that exist today. *Id*. at 2-3. In 1998, the Department of Labor replaced the DOT with O*NET, but the SSA and other agencies found that O*NET and other similar systems "would require significant modification to meet the needs of its disability programs." *Id*. at 3. Since 2008, the SSA has been developing its own source of occupational information,

---

[19] King notes that the SSA established the OIDAP in 2008 to provide guidance on the SSA's plan to replace the DOT "to ensure up-to-date vocational evidence in our disability programs." (Doc. No. 32 at p. 27) (citing Establishment of the OIDAP, 73 Fed. Reg. 78864-01 (Dec. 23, 2008). In 2009, the OIDAP concluded that "while the DOT was a remarkable achievement for its time, advances in technology, psychometrics, job analysis, and taxonomic theory, as well as changes in the US labor market, render the DOT's foundation problematic." SSA, Occupational Information Development Advisory Panel, Content Model and Classification Recommendations at p. 21 (Sept. 2009), located at www.ssa.gov/oidap/Documents/FinalReportRecommendations. The OIDAP recommended that a new occupational information system ("OIS") be created to replace the DOT. *Id*. at p. 1.

called the Occupational Information System ("OIS"), which the SSA endeavors to implement sometime in 2020. *Id.* at 3, 7, 10; *see* Establishment of the Occupational Information Development Advisory Panel, 73 FR 78864-01, 2008 WL 5329223 (Dec. 23, 2008). Until such time, the current regulations remain.

(Doc. No. 30 at pp. 24-25.) The Magistrate Judge went on to conclude that the ALJ did not err in relying on the VE's testimony regarding available jobs in the national economy. Specifically, the Magistrate Judge noted that, although some courts had remanded on the grounds that particular DOT job descriptions were obsolete, no error occurred in the instant case for several reasons, including the following:

> Here, Plaintiff's contention focuses on the number of jobs available nationally rather than the job descriptions. ECF Dkt. #20 at 23-26. Plaintiff relied on O*NET statistics from 2014, which he submitted into evidence. *Id.* at 23. For "cafeteria attendant" (DOT 311.677-010, SOC/O*NET 35-9011), the VE, relying on the DOT, posited that there were approximately 57,000 jobs available nationally. Tr. at 1439. For "furniture rental clerk" (DOT 295-357-018, SOC/O*NET 41-2021), the VE, relying on the DOT, posited that there were approximately 50,000 jobs available nationally. *Id.* at 1439. And for "sales attendant" (DOT 299.677-010, SOC/O*NET 41-2031), the VE, relying on the DOT, posited that there were approximately 200,000 jobs available nationally. *Id.* at 1439.

> Plaintiff contends that the VE actually *underestimated* the number of available jobs for each of the three occupations. ECF Dkt. #20 at 23. Specifically, Plaintiff argues that the VE underestimated the number of positions for "cafeteria attendant" by 350,000 jobs, only accounted for 11.8% of jobs for "furniture rental clerk," and only accounted for 4.3% of jobs for "sales attendant." *Id.* Plaintiff acknowledges that the number of available jobs was more than the VE stated in the written interrogatories, but he argues that this "calls into question the credibility" of the VE's findings. *Id.* Plaintiff is correct in that the employment figures are significantly different between what the VE provided and the particular version of O*NET that Plaintiff relied upon. However, this Circuit still follows the regulations providing that the VE and ALJ should rely primarily on the DOT. SSR 00-4p; *see Earls v. Comm'r of Soc. Sec.*, 1:09CV01465, 2011 WL 3652435, at *7 (N.D. Ohio Aug.19, 2011). Also, given the fact that all three occupations have higher figures for available opportunities nationally, according to O*NET, the undersigned recommends that the Court find that Plaintiff's second and third reasons of how Defendant failed to meet the Step Five burden are without merit.

(*Id.* at pp. 28-29) (footnotes omitted).

In light of the above, the Court finds the Magistrate Judge fully acknowledged and addressed King's arguments regarding the obsolescence of the DOT. Moreover, upon *de novo* review, the Court agrees with the Magistrate Judge that the ALJ did not err in relying on the VE's testimony in the instant case. After the Magistrate Judge issued his R&R, the Sixth Circuit expressly clarified that DOT data can be used to establish the existence of jobs in the national economy in significant numbers. *See O'Neal II v. Comm'r of Soc. Sec.*, 2020 WL 97414 at * 3-4 (6th Cir. Jan. 7, 2020). Specifically, the Sixth Circuit explained as follows:

> Recognizing the apparent confusion among some of the lower courts about whether the DOT continues to be a reliable source of information at step five, we clarify that the DOT data can establish the existence of jobs in the national economy in significant numbers. Although the court remanded to the ALJ in *Cunningham [v. Astrue*, 360 Fed. Appx. 606 (6th Cir. 2010)] for further consideration at step five, the panel did not conclude categorically that the DOT was an obsolete and unreliable source of job information. The current regulation governing this inquiry lists the DOT as a source of "reliable job information." 20 C.F.R. § 404.1566(d)(1). The regulation does not list O*NET as a reliable source. And, in fact, in 2010, the SSA determined that O*NET in its current form was not suitable for disability claims adjudication. *See* Occupational Infor. Dev. Advisory Panel, Findings Report: A Review of the National Academy of Sciences Report, Report to the Comm'r of Soc. Sec. 1, 8 (June 28, 2010), https://www.ssa.gov/oidap/Documents/COMPLETE%20FINAL%20findings%20Report%20OIDAP%20062810.pdf. [footnote omitted].

> What is more, in *Kyle [v. Comm'r of Soc. Sec.*, 609 F.3d 847 (6th Cir. 2010)], published after *Cunningham*, we reiterated that the ALJ can rely on the DOT to establish that work exists in the national economy. 609 F.3d at 855. We follow *Kyle* here. And we note that no binding post-*Cunningham* decision from this court has remanded to the Commissioner based on a vocational expert's reliance on the DOT.

> *Kyle* also noted that the ALJ can rely on vocational expert testimony. *Id.* All that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict. *See Lindsley*, 560 F.3d at 603 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)); *see also Gallo v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 648, 650 (9th Cir. 2011) ("[Vocational expert] testimony may become unreliable on account of a conflict with the DOT, but not on account of its compliance with the DOT." (citation omitted)).

*O'Neal II*, 2020 WL 97414 at * 3-4.

Here, the ALJ expressly ordered the VE to inform the Court of any conflicts between his testimony and the information in the DOT. (Tr. 1081.) The VE did not report any such conflicts. Since the VE identified no conflicts, the ALJ could rely on his testimony, especially given the fact that King was given a full opportunity to cross-examine the VE in this case and did so. (Tr. 1085-1095.) *See O'Neal*, 2020 WL 97414 at * 4 (stating that an ALJ is under no duty to conduct an independent investigation into a VE's testimony to determine whether it was correct); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006). Accordingly, this argument in support of King's objections is without merit. [20]

King also argues, summarily, that certain social security regulations which he believes relate to the use of the DOT (i.e., 20 C.F.R. §§ 404.1567, 404.1568, 416.967, and 416.968)[21] violate his due

---

[20] During the hearing, King questioned the VE about the amount of time standing and walking per day for the jobs of furniture rental clerk, sales attendant, and cafeteria attendant. (Tr. 1089-1090.) Although unclear, he appears to have been attempting to raise a conflict between the DOT descriptions for those jobs and the O*NET descriptions for jobs that he believes correspond to the jobs identified by the VE. The VE explained that the DOT characterizes the furniture rental clerk, sales attendant, and cafeteria attendant jobs as "light" but does not give specific hours as far as the amount of time standing and walking per day. (Tr. 1089.) Based on his experience with "working individuals in these different jobs," the VE testified that the sales attendant job usually would require six to seven hours of standing/walking per day, and the cafeteria attendant would require approximately five hours per day. (Tr. 1090.) The VE also testified that he does not typically rely on the O*NET, although he acknowledged that some VEs do. (Tr. 1092-1093.) The Magistrate Judge found, and this Court agrees, that King has failed to demonstrate a conflict between the VE's testimony and the DOT. Moreover, courts within this Circuit have rejected the argument that a failure to consult O*NET constitutes error. *See, e.g., Zimmerman v. Comm'r of Soc. Sec.*, 2019 WL 4736267 at * 11-12 (N.D. Ohio Sept. 17, 2019) (rejecting the argument that the ALJ erred in failing to consult job descriptions set forth in O*NET); *Rollston v. Comm'r of Soc. Sec.*, 2016 WL 6436676 at * 5 (W.D. Mich. Nov. 1, 2016) ("The ALJ was not required to accept the occupational information contained in the O*NET Online"); *Snow v. Commissioner*, 2015 WL 4507271 at * 20 (N.D. Ohio July 24, 2015) (stating that there is "no requirement that the VE's testimony be consistent with O*NET"); *Earls v. Comm'r of Soc. Sec.*, 2011 WL 3652435 at * 7 (N.D. Ohio Aug. 19, 2011) ("Although the [job] descriptions [in dispute] contained in the O*NET are more expansive than those in the DOT, they do not raise doubts as to the reliability of the DOT descriptions.").

[21] The regulations identified by King do not actually directly relate to the ability of an ALJ to rely on VE testimony based on DOT data. 20 C.F.R. § 404.1567 and 20 C.F.R. § 416.967 simply set forth the regulatory definitions of the terms sedentary work, light work, medium work, and heavy work; and state that those terms have the same meaning as they have in the DOT. 20 C.F.R. § 404.1568 and 20 C.F.R. § 416.968 do not even refer to the DOT but rather state that the

process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. (Doc. No. 32 at p. 26.) Notably, King does not assert any due process defects regarding the hearing itself or any procedures relating to that hearing. Rather, King appears to base his due process argument solely on his assertions that the DOT is out of date and obsolete.

The Court finds King's argument to be without merit. As discussed above, the Sixth Circuit has expressly held that DOT data can be used to establish the existence of jobs in the national economy in significant numbers. *See O'Neal II v. Comm'r of Soc. Sec.*, 2020 WL 97414 at * 3-4. Moreover, the alternative job numbers identified by King in his Merits Brief are actually greater than the job numbers identified by the VE during the hearing. In sum, King has simply failed to either articulate or demonstrate a violation of his due process rights under the particular circumstances presented.[22] Accordingly, the Court finds this argument in support of King's objections to be without merit.

For all the reasons set forth above, King's sixth, and final, objection is overruled.

---

SSA uses materials published by the Department of Labor when classifying an occupation as unskilled, semi-skilled, or skilled.

[22] As the Magistrate Judge correctly noted in his R&R, at least one federal district court has found that "there is no due process violation where . . . the alleged violation stems from the use of a governmental publication that is authorized by regulation," i.e., the DOT. *Thompson v. Berryhill*, 2018 WL 1568760 at * 2 (D. Utah Mar. 29, 2018).

**III.    Conclusion**

For all of the foregoing reasons, King's Objection (Doc. No. 32) is overruled. The Court accepts the Magistrate Judge's Report and Recommendation (Doc. No. 30), and the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**


                                                  _s/Pamela A. Barker_____
                                                  PAMELA A. BARKER
Date:  March 3, 2020                              U. S. DISTRICT JUDGE